DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**FRANKLIN JONES,**
Appellee.

No. 4D16-3390

[November 8, 2017]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Matthew I. Destry, Judge; L.T. Case No. 16-9577 CF10A.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melanie Dale Surber, Senior Assistant Attorney General, West Palm Beach, for appellant.

Carey Haughwout, Public Defender, and J. Woodson Isom, Assistant Public Defender, West Palm Beach, for appellee.

CIKLIN, J.

After an inmate at a correctional facility was disciplined for violating the inmate code of conduct by attacking a corrections officer, the state charged him with battery on a law enforcement officer. The inmate moved to dismiss the information, arguing that the criminal charge was precluded by double jeopardy principles. The trial court granted the motion and the state appeals. Because we find that the Double Jeopardy Clause was never meant to impinge on remedial institutional discipline, we reverse the trial court's order of dismissal.

In his motion to dismiss, the appellant, Franklin Jones, argued that the prosecution was barred because the Broward Sheriff's Office imposed what amounted to a criminal sanction for his bad behavior. During the hearing, he introduced into evidence the Broward Sheriff's Office Department of Detention and Community Control Inmate Handbook ("the handbook"), which contains a code of conduct for inmates. The code of conduct provides that the commission of specified Category A offenses could result in "thirty . . . days of disciplinary segregation, up to thirty . . . days of room

restriction, and/or loss of partial or all earned gain time . . . ." Jones also introduced a "Disciplinary Committee Action Sheet" ("the disciplinary report"), which reflects that Jones was found guilty of assault, fighting, and disruptive conduct, all Category A infractions. The disciplinary report also reflects that Jones received thirty days of "Disciplinary Detention," but that he did not lose any gain time.

Jones argued that the potential sanctions provided for in the code of conduct amounted to criminal penalties. The trial court granted the motion to dismiss based on a finding that the potential of revocation of gain time had no purpose other than punishment and was thus a criminal penalty and a violation of double jeopardy.

The parties do not dispute the facts underlying this purely legal issue. Thus, our review is de novo. *Binns v. State*, 979 So. 2d 439, 441 (Fla. 4th DCA 2008). "The federal and Florida constitutions prohibit being twice placed in jeopardy for the same offense." *Hall v. State*, 823 So. 2d 757, 761 (Fla. 2002), *abrogation on other grounds recognized in State v. Johnson*, 122 So. 3d 856, 862 (Fla. 2013); *see also* Amend. V, U.S. Const.; Art. I, § 9, Fla. Const. This constitutional protection encompasses "multiple punishments for the same offense." *U.S. v. Mayes*, 158 F.3d 1215, 1219 (11th Cir. 1998) (citation omitted). "The scope of the Double Jeopardy Clause is the same in both the federal constitution and the Florida Constitution." *Hall*, 823 So. 2d at 761.

The United States Supreme Court has elaborated on the process of determining whether double jeopardy is implicated by the imposition of both judicial and administrative penalties:

> We have long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "'in common parlance,'" be described as punishment. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549, 63 S. Ct. 379, 387, 87 L. Ed. 443 (1943) (quoting *Moore v. Illinois*, 14 How. 13, 19, 14 L. Ed. 306 (1852)). The Clause protects only against the imposition of multiple *criminal* punishments for the same offense, *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 633, 82 L. Ed. 917 (1938); see also *Hess*, *supra*, at 548-549, 63 S. Ct., at 386-387 ("Only" "criminal punishment" "subject[s] the defendant to 'jeopardy' within the constitutional mean-ing"); *Breed v. Jones*, 421 U.S. 519, 528, 95 S. Ct. 1779, 1785, 44 L. Ed. 2d 346 (1975) ("In the constitutional sense, jeopardy describes the risk that is traditionally associated with a criminal

prosecution"), and then only when such occurs in successive proceedings, see *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983).

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering, supra*, at 399, 58 S. Ct., at 633. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Ward*, 448 U.S., at 248, 100 S. Ct., at 2641. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.*, at 248-249, 100 S. Ct., at 2641, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S. Ct. 219, 222, 100 L. Ed. 149 (1956).

In making this latter determination, the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S. Ct. 554, 567-568, 9 L. Ed. 2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id.*, at 169, 83 S. Ct., at 568, and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, *Ward*, *supra*, at 249, 100 S. Ct., at 2641-2642 (internal quotation marks omitted).

*Hudson v. United States*, 522 U.S. 93, 98-100 (1997) (alterations in original).

Prior to the issuance of the *Hudson* opinion, two of our sister courts held that double jeopardy protections did not apply to a judicial proceeding

3

following an administrative proceeding. *See Larkin v. State*, 558 So. 2d 486, 487 (Fla. 5th DCA 1990); *Sadler v. State*, 333 So. 2d 69, 69 (Fla. 1st DCA 1976). *Larkin* contained no analysis and merely relied on *Sadler*. 558 So. 2d at 487. *Sadler* relied on federal circuit court opinions. 333 So. 2d at 69.

Only one of our sister courts has written post-*Hudson* on the issue presented here. *See State v. Converse*, 78 So. 3d 78, 79-81 (Fla. 5th DCA 2012). The court did not, however, reach the merits and apply the *Hudson* analysis to the facts before it, instead finding that the motion to dismiss was insufficient as the defendant did not submit to the court the statute or regulation under which she was administratively sanctioned. *Id.* at 81.

Federal and other state appellate courts have applied the *Hudson* analysis and their opinions provide guidance. We turn first to the thoroughly-reasoned opinion of the Eleventh Circuit in *Mayes*, 158 F.3d 1215. That case involved appellants who had received prison disciplinary sanctions (transfers to maximum security prisons; disciplinary segregation for sixty days; disallowance of a portion of accrued good conduct time; temporary losses of telephone, commissary, and/or recreational privileges; and losses of visitation privileges for up to one year) for their involvement in a prison riot, and who were ultimately charged with offenses for the same underlying conduct. *Id.* at 1217. The appellants moved to "dismiss the indictment on double jeopardy grounds, arguing that the prior prison disciplinary sanctions precluded the subsequent criminal prosecutions for the same conduct." *Id.* Their motion was denied. *Id.* at 1217-18.

On appeal, the Eleventh Circuit recognized that the pre-*Hudson* general rule among the circuit courts was that "prison disciplinary sanctions do not bar subsequent criminal prosecutions on double jeopardy grounds." *Id.* at 1220. The court acknowledged that a United States Supreme Court opinion, *United States v. Halper*, 490 U.S. 435 (1989), had caused the circuit courts to consider "whether prison disciplinary sanctions might ever be considered sufficiently excessive to constitute criminal punishment for double jeopardy purposes," but that the courts addressing the issue distinguished *Halper* and declined to recognize an exception to the general rule.[1] *Mayes*, 158 F.3d at 1220. The court then explained

---

[1] *Halper* involved a statute which allowed a monetary penalty to be imposed for the making of false claims for government reimbursement. *Halper*, 490 U.S. at 438. The Court held that a civil penalty may constitute punishment for the purpose of the Double Jeopardy Clause where it is "overwhelmingly

that in *Hudson*, the Supreme Court "disavow[ed]" the *Halper* analysis and recognized that such an analysis "elevated a single *Kennedy* factor – whether the sanction appeared excessive in relation to its nonpunitive purposes – to dispositive status." *Id.* at 1221 (quoting *Hudson*, 522 U.S. at 96, 101). The Eleventh Circuit recognized that "[u]nder *Hudson*, the decisions in *Ward* and *Kennedy* exemplify the double jeopardy standards." *Id.* at 1222. The court then looked to decisions of its predecessor circuit in the wake of *Kennedy*:

> After receiving the benefit of the Supreme Court's guidance in *Kennedy*, our predecessor circuit rendered opinions in several cases applying double jeopardy principles within the context of prison disciplinary sanctions. *See United States v. Bryant*, 563 F.2d 1227, 1230 (5th Cir. 1977) (administrative revocation of good conduct time after participation in prison riot did not bar subsequent criminal prosecution for same conduct), *cert. denied*, 435 U.S. 972, 98 S. Ct. 1616, 56 L. Ed. 2d 65 (1978); *United States v. Lepiscopo*, 429 F.2d 258, 261 (5th Cir.) (administrative forfeiture of accumulated good time credits and placement in solitary confinement after participation in escape attempt did not bar subsequent criminal prosecution for same conduct), *cert. denied*, 400 U.S. 948, 91 S. Ct. 255, 27 L. Ed. 2d 254 (1970); *Gilchrist v. United States*, 427 F.2d 1132, 1133 (5th Cir. 1970) (affirming denial of petition for writ of habeas corpus, holding that Double Jeopardy Clause "is not violated because a prisoner is subjected to discipline by prison authorities for violating prison regulations and is also prosecuted in the district court in a criminal action based upon the same acts"); *United States v. Cordova*, 414 F.2d 277, 277 (5th Cir. 1969) (rejecting argument that "the combination of administrative punishment and criminal conviction" violated the Double Jeopardy Clause, and holding that "[a]dministrative discipline of a prisoner does not prohibit criminal prosecution for the same event").

*Mayes*, 158 F.3d at 1222 (alteration in original) (footnote omitted).

The Eleventh Circuit then undertook the two-step analysis of *Hudson*, looking first to the face of the statutory regulations under which the appellants were disciplined. *Id.* at 1222-23. As the stated purpose of the

---

disproportionate to the damages . . . caused" and "bears no rational relation to the goal of compensating the Government for its loss." *Id.* at 449.

regulations was to effect a "safe and orderly environment" for prisoners, the court found that the regulations "explicitly articulate only a nonpunitive, remedial purpose," and that this was "persuasive proof that the government intended for the disciplinary regulations to be civil in nature, not criminal." *Id.* at 1223. The court observed that the regulations distinguished prosecution from the prison disciplinary process and that "this language further confirms that the government intended to create civil sanctions through the regulatory scheme at issue." *Id.* The court also found that the legislature's delegation of authority to the Bureau of Prisons, an administrative agency, was "prima facie evidence that Congress intended to provide for a civil sanction." *Id.* (quoting *Hudson*, 522 U.S. at 103).

The court then moved on to *Hudson*'s second step, "whether . . . the sanctions authorized in these regulations are 'so punitive in form and effect as to render them criminal despite [the government's] intent to the contrary.'" *Id.* (alteration in original) (quoting *United States v. Ursery*, 518 U.S. 267, 290 (1996)). The court first explained that under *Hudson*, it was the potential penalty, not the actual penalty, that was dispositive: "[T]he pertinent inquiry is whether the authorized civil sanctions for violations of prison rules are so punitive as to be transformed into criminal punishment. It is at this analytical stage that the seven *Kennedy* factors come into play." *Id.* The court then elaborated on application of these factors to prison discipline:

> [P]rison discipline cases do not fit neatly into the matrix of double jeopardy doctrine. This is because in the prison context, virtually any form of sanction seems "criminal" and "punitive" as we commonly understand those terms. With that in mind, we recognize that many of the *Kennedy* factors may weigh in the appellants' favor and support their argument that the disciplinary regulations constitute criminal punishment for double jeopardy purposes. For instance, because the appellants are already incarcerated, some of the authorized sanctions will inevitably "involve [] an affirmative disability or restraint" for purposes of the first factor. *Kennedy*, 372 U.S. at 168, 83 S. Ct. 554. In the same vein, some of these sanctions might also be "historically . . . regarded as a punishment," given the context. 372 U.S. at 168, 83 S. Ct. 554. With respect to the third *Kennedy* factor - whether the sanction "comes into play only on a finding of scienter" - the regulatory provisions make clear that an inmate's mental health at the time he is alleged to have engaged in misconduct is relevant to determining whether

disciplinary action is appropriate. 372 U.S. at 168, 83 S. Ct. 554. *See* 28 C.F.R. § 541.10(b)(6). The fourth consideration is whether the sanction "promote[s] the traditional aims of punishment." 372 U.S. at 168, 83 S. Ct. 554. Indeed, the imposition of discipline in prison seems aimed, at least in part, at deterring inmates from violating institutional rules in the future. Fifth, many of the prohibited acts to which these sanctions apply are "already . . . crime[s]." 372 U.S. at 168, 83 S. Ct. 554. The last two *Kennedy* factors, on the other hand, probably weigh against the appellants in that the disciplinary sanctions could be regarded as "rationally . . . connected" to an alternative, nonpunitive purpose - namely, maintaining institutional order - without "appear[ing] excessive" in relation to that purpose. 372 U.S. at 168-69, 83 S. Ct. 554.

We have some flexibility in determining the extent that we choose to utilize the considerations enunciated in *Kennedy* for purposes of our double jeopardy analysis. *See Hudson*, 522 U.S. at ----, 118 S. Ct. at 493 (classifying *Kennedy* factors as "useful guideposts"); *Ward*, 448 U.S. at 249, 100 S. Ct. 2636 (describing *Kennedy* factors as "helpful," but "neither exhaustive nor dispositive"). We therefore exercise our discretion to attribute less significance to *Kennedy*'s list of considerations in this particular case, primarily because it arises within the prison context. In this unique setting, we must take into account the fact that a prison's remedial and punitive interests are inextricably related. As the Second Circuit observed, "[p]unitive interests and remedial interests . . . are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals" and where "remedial concerns require 'punishing' individuals for violent or other disruptive conduct[.]" *United States v. Hernandez-Fundora*, 58 F.3d 802, 806, 807 (2d Cir. 1995).

Moreover, we factor into our analysis the importance of granting some deference to the judgments of prison authorities in determining "what is necessary and proper to preserve institutional order and discipline, and to encourage good conduct[.]" *United States v. Newby*, 11 F.3d 1143, 1146 (3d Cir. 1993); *see also Garrity v. Fiedler*, 41 F.3d 1150, 1153 (7th Cir. 1994) ("Historically, we have deferred to the expertise

7

of prison authorities regarding questions of prison administration and discipline."). Accordingly, we recognize the need to refrain from hindering institutional administration. We find the Third Circuit's reasoning persuasive in this regard:

> We do not believe that the Double Jeopardy Clause was ever intended to inhibit prison discipline. . . . If a prison disciplinary sanction bars subsequent criminal prosecution, the prison authorities will be forced to choose between instituting a disciplinary proceeding or awaiting a criminal prosecution. The process of conducting a criminal investigation and prosecution may take considerable time. The difficulties and delay that a criminal prosecution entails would leave the prisoners who violated the prison rules without a prompt resolution of charges and hinder prison administration and discipline.

*Newby*, 11 F.3d at 1146.

> Prison officials have no authority to alter the inmates' original criminal sentences. They merely implement disciplinary proceedings that may, at most, change the conditions of the inmates' confinement for purposes of maintaining institutional order and encouraging compliance with prison rules.

> Under these circumstances, we cannot conclude that the regulations authorizing the prison disciplinary sanctions imposed against these appellants are so punitive as to override the government's intent to create remedial administrative penalties for inmate misconduct. Accordingly, we decline to classify the regulations as "criminal," and the appellants' double jeopardy challenge fails.

*Mayes*, 158 F.3d at 1223-25 (all but first alteration in original).

Other federal circuit courts have agreed with the reasoning of *Mayes*. *See United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008) (agreeing with other circuit courts that the "Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct"); *Porter v. Coughlin*, 421 F.3d 141, 142, 148-49 (2d Cir. 2005)

8

(holding that a New York regulation that permitted a lengthy period of disciplinary confinement as a penalty for the appellant's involvement in rioting and violent conduct while a prison inmate amounted to a civil, not criminal, penalty and thus did not violate the Double Jeopardy Clause). Additionally, the Tenth Circuit has taken the same position post-*Hudson* but without citing to *Mayes*. *See Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) ("Because the Double Jeopardy clause only applies to proceedings that are 'essentially criminal' in nature, *see Breed v. Jones*, 421 U.S. 519, 528, 95 S. Ct. 1779, 44 L. Ed. 2d 346 (1975), 'it is well established that prison disciplinary sanctions' – such as administrative segregation – 'do not implicate' double jeopardy protections. *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004).").

State appellate courts and the court of appeals for the District of Columbia have also concluded, post-*Hudson*, that prison sanctions do not implicate double jeopardy concerns. *See Haney v. United States*, 999 A.2d 48, 50 (D.C. 2010) (finding the reasoning of *Porter* and *Mayes* persuasive and holding "that the administrative discipline imposed in this case was not punitive in effect or purpose"); *Rogers v. State*, 44 S.W.3d 244, 247 (Tex. Ct. App. 2001) (finding "that the *Hudson* test is not appropriate for prison disciplinary sanctions [as] [i]t is well-established that sanctions assessed by a prison do not preclude the state from prosecuting a prisoner for the same conduct"); *Commonwealth v. McGee*, 744 A.2d 754, 756-59 (Pa. 2000) (discussing *Hudson* and holding that "where . . . prison disciplinary action is imposed for infractions of prison regulations within the confines of the authorized administrative scheme, and such discipline falls within the range of predictable punishment under the original sentence and can be justified on the basis of safe, orderly or efficient institutional administration, it does not implicate [double jeopardy]").

In the instant case, the handbook does not contain an express indication of whether the sanctions for violations of the code of conduct are intended to be civil or criminal in nature. However, the handbook contains language indicating that the purpose of the disciplinary penalties is to manage the inmates.[2] This is evidence that the sanctions are civil in nature. Jones does not assert otherwise.

---

[2] The handbook provides the following preamble to the "Rules and Discipline" section:

> Inmate behavior management begins when you are admitted to the facility. You are required to obey the facility rules and regulations and the Inmate Code of Conduct posted in this handbook and in your housing area. Violating a rule or regulation may result in

The handbook provides for potential disciplinary sanctions, including detention and loss of gain time, which are of the ilk involved in *Mayes*. We find the *Mayes* reasoning persuasive. Although many of the *Hudson* factors may weigh in favor of a finding that the disciplinary system here is criminal in nature, *Hudson* makes it clear that no one *Kennedy* factor takes precedence in the analysis or is dispositive. Additionally, as explained in *Mayes*, these types of penalties are largely intended to keep order. To the extent deterrence is a happy side effect of that goal, this does not transform the penalties into criminal punishment for purposes of a double jeopardy analysis. *See Hudson*, 522 U.S. at 105 ("[T]he mere presence of [the purpose of deterrence], is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.'" (quoting *Ursery*, 518 U.S. at 292)).

Based on the foregoing analysis, we reverse the order of dismissal and remand for further proceedings.

*Reversed and remanded.*

GROSS and KLINGENSMITH, JJ., concur.

*     *     *

***Not final until disposition of timely filed motion for rehearing.***

---

disciplinary action, for which you will receive a written disciplinary report . . . . Discipline **will not** involve sanctions which are unconstitutional, unlawful, arbitrary, capricious, or in the nature of retaliation or revenge.

(Emphasis in original).