**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0324-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAQUIL K. CLARK, a/k/a
RAPHEAL BLAKENEY,
RAPHAEL BLAKENEY, JOEY
BLAKENEY, JOEY RALPH,
RAFAEL BLAKENEY,
RAPLAEL BLAKENEY, and
RANDY CLARK,

     Defendant-Appellant.

_____

Submitted January 6, 2020 – Decided September 9, 2020

Before Judges Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 17-09-0862.

Joseph E. Krakora, Public Defender, attorney for appellant (Marcia H. Blum, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

The Department of Corrections imposed disciplinary sanctions on defendant Raquil K. Clark after finding he assaulted two corrections officers, and disrupted or interfered with prison security and order. The State thereafter obtained a criminal indictment, charging Clark with two counts of aggravated assault, N.J.S.A. 2C:12-1(b)(5)(h). Clark unsuccessfully argued the indictment should be dismissed because the Double Jeopardy Clause barred his prosecution. He then pleaded guilty to one count, conditioned on his right to renew his contention on appeal. We now reject his argument. The Double Jeopardy Clause "protects only against the imposition of multiple criminal punishments for the same offense," Hudson v. United States, 522 U.S. 93, 99 (1997). We hold that Clark's prison discipline is not "criminal punishment." Therefore, the Clause did not bar the State's prosecution.

I.

On a motion to dismiss an indictment, we normally assume the facts alleged in the indictment. State v. Cobbs, 451 N.J. Super. 1, 5 (App. Div. 2017). The two-count indictment charged that Clark "purposely did attempt to cause

and/or purposely or knowingly or recklessly caused bodily injury" to two corrections officers while they were performing their duties "while in uniform, or exhibiting evidence of [their] authority." Two other inmates were also indicted in connection with the incident. In his plea, Clark admitted he swung a balled fist at one officer with the purpose to cause bodily injury. That constituted a purposeful attempt to cause bodily injury. See N.J.S.A. 2C:12-1(b)(5), incorporating N.J.S.A. 2C:12-1(a)(1).

To understand the prison disciplinary proceedings, we rely, as does Clark, on a Corrections Department Criminal Investigation Report and Clark's inmate progress notes report.[1] According to those documents, Clark joined two fellow inmates in assaulting two officers. The records state that the other inmates

---

[1]    The Department's Special Investigations Division sent the Criminal Investigation Report to the prosecutor as required by N.J.A.C. 10A:4-4.2 and N.J.A.C. 10A:21-8.2, -8.5. Notably, the record before us does not include documents related to the underlying disciplinary proceedings, such as the disciplinary and investigation reports and the written charges, N.J.A.C. 10A:4-9.1, -9.5; the evidence presented at the hearing (such as the video-recording of the assault); the hearing officer's disciplinary decision, N.J.A.C. 10A:4-9.24; the documents Clark submitted in support of his administrative appeal; and the subsequent decision, N.J.A.C. 10A:4-11.7. The Investigation Report at one point states Clark was sanctioned only for conduct which disrupts the prison's security or order, N.J.A.C. 10A:4-4.1(a) *.306. But elsewhere, the report states that "the evidence revealed" that Clark assaulted both officers; and Clark's Inmate Management Progress Notes Report reflects that he was disciplined both for *.306, and assault, *.002.

punched the two officers, and kicked one in the face while one officer was on the ground. A video-recording depicted Clark running toward the officers and assaulting both. This was not Clark's first violent incident while incarcerated. The previous year, Clark had been sanctioned with 10 days of detention, 270 days of administrative segregation, and 270 days of loss of commutation time, for fighting with another person, N.J.A.C. 10A:4-4.1(a) *.004.[2]

After a hearing, Clark was found to have committed a single charge of assault of another person, N.J.A.C. 10A:4-4.1(a) *.002, and engaging in conduct that disrupts or interferes with prison security or order, N.J.A.C. 10A:4-4.1(a) *306.[3] On each prohibited act, he received 300 days of administrative segregation, and 300 days loss of commutation time. The hearing officer's determination and sanction were upheld on administrative appeal.

Almost two years after the assault, Clark was indicted. At the oral argument on the motion to dismiss on double jeopardy grounds, Clark's counsel

_____

[2] Both Clark's previous sanction (2014), and the ones at issue in this case (2015), were imposed under the previous departmental regulations, see 48 N.J.R. 915(a) (June 6, 2016) (rule proposal), and 49 N.J.R. 105(a) (Jan. 3, 2017) (rule adoption). We thus do not cite to the regulations as they are currently organized in N.J.A.C. 10A:4-4.1(a).

[3] The record does not indicate why he was found to have committed a single assault — especially when the Investigation Report stated that the evidence "revealed" that Clark assaulted two officers.

4

highlighted the severity of his disciplinary sanction.  Clark himself confirmed that administrative segregation strictly limited his recreational and other privileges.  But he admitted it did not involve solitary confinement, as he shared his cell with another inmate.

The trial court denied defendant's motion.  Relying on a federal appellate court decision it found persuasive, the court held that the Double Jeopardy Clause does not bar a criminal prosecution for criminal conduct that was the subject of prison disciplinary sanctions.  The judge reasoned that "[t]he sanctions were remedial and meant to address the goal of maintaining institutional order and security" and did not "constitute additional punishment."

Thereafter, Clark entered his conditional plea and was sentenced.  The sentence presents a separate issue on appeal, which we discuss after addressing the double jeopardy argument.

## II.

We review de novo the trial court's decision denying the dismissal motion, as it turns on a purely legal question.  See State v. Shaw, 455 N.J. Super. 471, 481 (App. Div. 2018) (noting that "[a]lthough an abuse of discretion standard generally governs our review of a trial court's decision on a motion to dismiss an indictment, we review de novo a decision that 'relies on a purely legal

A-0324-18T2

question'" (quoting State v. Twiggs, 233 N.J. 513, 532 (2018))), aff'd, 241 N.J. 223 (2020). The dispositive question for double jeopardy analysis is whether prison disciplinary sanctions constitute criminal punishment, since the Double Jeopardy Clause only bars successive "criminal punishments for the same offense." Hudson, 522 U.S. at 99. Following the two-stage analysis that Hudson prescribes, we conclude (1) the Legislature intended prison disciplinary sanctions to be civil; and (2) in light of a non-exhaustive list of "useful" factors and other considerations, the disciplinary scheme is not "so punitive either in purpose or effect as 'to transform what was clearly intended as a civil remedy into a criminal penalty.'" Ibid. (quoting Rex Trailer Co. v. United States, 350 U.S. 148, 154 (156)).

The Fifth Amendment's Double Jeopardy Clause, and our State Constitution's protection against double jeopardy, N.J. Const., Art. I, ¶11, are coextensive. State v. Schubert, 212 N.J. 295, 304 (2012). They bar a second prosecution for the same offense after an acquittal or after a conviction, and "'multiple punishments for the same offense.'" Id. at 304-05 (quoting Jones v. Thomas, 491 U.S. 376, 381 (1989)).

Clark seeks the latter form of protection. He has satisfied the requirement that the multiple criminal punishment must occur "in successive proceedings."

Hudson, 522 U.S. at 99. And we assume for purposes of his appeal that the subsequent prosecution was for the "same offense" that triggered prison discipline. As Clark notes, the incident preceded our Supreme Court's decision in State v. Miles, 229 N.J. 83 (2017); so, he could establish "same offense" by showing the "same-evidence" or the "same-elements" were implicated. Id. at 99. We therefore focus on the character of prison discipline. Everyday notions of punishment are not dispositive. "[T]he Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." Hudson, 522 U.S. at 98-99 (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 549 (1943)).

"Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." Id. at 99. Therefore, we must first look for an express or implied legislative intent to characterize the sanction as civil or criminal. Ibid. However, the Legislature's intent is not the final word. As a second stage of analysis, a court will deem a punishment to be criminal if it is "so punitive either in purpose or effect." Ibid. (quoting United States v. Ward, 448 U.S. 242, 248-49 (1980)). A court will override legislative intent based only on "the clearest proof" pertaining to the disciplinary statute "on its face."

A-0324-18T2

Id. at 100 (quoting Ward, 448 U.S. at 249, and then Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169 (1963)).

In analyzing a disciplinary scheme's "purpose or effect," the Supreme Court found as "useful guideposts" seven factors:

> (1) "whether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."
>
> [Id. at 99-100 (quoting Kennedy, 372 U.S. at 168-69).]

However, the Kennedy factors are "neither exhaustive nor dispositive," Ward, 448 U.S. at 249, nor are they necessarily entitled to equal weight, Riley v. N.J. State Parole Bd., 219 N.J. 270, 286 n.6 (2014) (noting the United States Supreme Court, in Smith v. Doe, 538 U.S. 84, 105 (2003), deemed factors 3 and 5 of little weight in ex post facto analysis). As then-Judge Sotomayor observed, "It is particularly appropriate to apply the factors flexibly in the context of prison discipline cases . . . ." Porter v. Coughlin, 421 F.3d 141, 147 (2d Cir. 2005). That is so, "'because in the prison context, virtually any form of sanction seems

8

'criminal' and 'punitive' as we commonly understand those terms.'" Ibid. (quoting United States v. Mayes, 158 F.3d 1215, 1223 (11th Cir. 1998)).

We do not write on a clean slate. In two cases, State v. Hatterer, 75 N.J. Super. 400 (App. Div. 1962) and Russo v. New Jersey Department of Corrections, 324 N.J. Super. 576 (App. Div. 1999), we held that prison discipline was not criminal punishment under the Double Jeopardy Clause. Their reasoning supports our conclusion here, although in neither did we fully apply Hudson's two-stage analysis, including the Kennedy guideposts. In Hatterer, which preceded Kennedy, we held that "double jeopardy is not applicable to punishment imposed by prison officials," since "[d]ouble jeopardy has reference to criminal prosecutions only." 75 N.J. Super. at 403. Consequently, we rejected the defendant's argument that the Double Jeopardy Clause barred his criminal prosecution and sentence for escape, after prison authorities imposed separate discipline upon his recapture.

In Russo, the prisoner did not challenge a subsequent criminal prosecution for behavior that already triggered prison discipline. Rather, he contended he was subject to successive prison disciplinary prosecutions for the same infraction. Anthony Russo was "acquitted" of prison disciplinary charges of running a gambling pool, based on his cell-mate's confession; but found guilty

of possessing cigarettes as unauthorized items. Thereafter, prison officials discovered compelling documentary evidence that Russo was indeed running a gambling operation in which inmates used cigarettes as currency. Russo used his word-processor in the endeavor; he purchased cigarettes outside the prison through agents; he then resold them to inmates; and he also accepted payment for helping inmates with their legal matters. In a second proceeding, the Department of Corrections found him guilty of operating an unauthorized business for profit, misusing electronic equipment, and improperly accepting something of value from another person. Id. at 579-80. On appeal, we rejected his argument that the second disciplinary proceeding violated the Double Jeopardy Clause.

We deemed the thrust of Russo's argument to be that the sanctions constituted significant penal restraints upon his liberty. Id. at 582. Applying the first stage of the Hudson analysis, we concluded that the Legislature intended sanctions imposed under New Jersey's system of prison discipline to be civil in nature. Id. at 583-84. We noted that prison discipline was never treated "as part of the criminal process," and is focused on "the remedial goal of maintaining institutional order and security." Id. at 583. We also observed that the prison

conduct that triggered discipline did not readily correspond to statutory or common law crimes. Id. at 583-84.

We reach the same conclusion here regarding legislative intent. In further support, we highlight that the Legislature conferred the disciplinary powers on an administrative agency. The Supreme Court has considered that "prima facie evidence" of the intent "to provide for a civil sanction." Hudson, 522 U.S. at 103.

We turn to the second stage of the Hudson analysis, and consider whether the prison sanctions are so punitive that they override the legislative intent to create a civil sanction. Although we identified the Kennedy factors in Russo, we did not expressly apply them to the issue presented. However, we do so in this case, and conclude that they do not provide the requisite "clearest proof" that the disciplinary sanctions constitute criminal punishment.

We recognize many of the factors tilt in favor of characterizing the sanctions — particularly administrative segregation — as criminal. See Porter, 421 F.3d at 147. Administrative segregation is an "affirmative restraint" (factor one). Harsh and prolonged confinement — which result from administrative segregation and lost commutation time — have "historically been regarded as a punishment" (factor two). Although the Department's regulations do not

expressly require a finding of scienter to prove the prohibited acts in this case, we have imposed a scienter requirement in other contexts, see Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010) (requiring knowing state of mind to prove possession of a prohibited substance, N.J.A.C. 10A:4-4.1(a) *.203), and may assume one applies here (factor three). The sanctions promote deterrence, if not retribution (factor four). And, "the behavior to which the sanctions apply is already a crime" (factor five), at least when it comes to swinging a fist at a corrections officer.

However, we agree with the Second Circuit that factors six and seven "weigh heavily," and tilt the balance against, the prisoner's double jeopardy claim, notwithstanding the finding that the first five factors favor his claim. Porter, 421 F.3d at 147. The prisoner in Porter contended that a disciplinary sanction for rioting-related infractions was barred, once he was convicted and sentenced for a riot-related crime — promoting prison contraband (he possessed a handmade knife during the riot). The court held that sanctioning the prisoner was rationally related to a non-punitive purpose, maintaining order and security (factor six), and the sanction was not excessive in relation to that purpose (factor seven). "If prison officials fail to sanction those involved in a prison riot, severe problems maintaining order in the prison may quickly follow." Id. at 148. The

court noted that special confinement conditions made it less likely the prisoner would participate in other violent acts. Ibid. "The need to maintain order . . . is a legitimate nonpunitive interest, even if it sometimes requires that prison officials take action of a punitive character." Ibid.

We reach the same conclusions with respect to Clark's conduct. The administrative sanctions at issue here serve the non-punitive purposes of maintaining order, and deterring the kind of behavior — assault on officers — that undermines it. Clark's contentions regarding the severity and excessiveness of his punishment do not persuade us. First, administrative segregation — notwithstanding its harshness — is not solitary confinement, which Clark contends imposes a severe toll on an inmate's mental health. Second, the Department's rule amendments, reducing and modifying the terms and conditions of administrative segregation, see 48 N.J.R. 915(a) (June 6, 2016) (rule proposal), and 49 N.J.R. 105(a) (Jan. 3, 2017) (rule adoption), do not render the prior sanctions "criminal punishment." Third, we must review the sanctions on their face, not as applied in Clark's particular case. Hudson, 522 U.S. at 99-100. In any event, coming on the heels of a previous sanction for fighting, we are not persuaded that his sanctions, although severe, were so excessive as to render them criminal punishment. Notably, Clark received a

13

sanction for a single assault, although the evidence indicated he assaulted two officers.

We repeat our observation in Russo: "Prisons are dangerous places, and the courts must afford appropriate deference and flexibility to administrators trying to manage this volatile environment." 324 N.J. Super. at 584. Corrections officials have a limited array of tools to respond to behavior that threatens the order and security of the institution. They cannot extend sentences. They can only affect the conditions of a term of confinement already ordered, and withdraw privileges or commutation time previously earned. See Porter, 421 F.3d at 148; Mayes, 158 F.3d at 1224. "[T]he punitive character of the [prison] environment may make even purely regulatory sanctions appear punitive in nature." Porter, 421 F.3d at 148; see also Mayes, 158 F.3d at 1224 (noting "in the prison context, virtually any form of sanction seems 'criminal' and 'punitive'"). But, we are persuaded, applying the Kennedy factors flexibly and mindful of the context in which the sanctions are imposed, that the Double Jeopardy Clause did not bar Clark's subsequent criminal sentence for the behavior that triggered the administrative sanctions.

In addition to Porter, other courts' decisions, applying Hudson, support our conclusion. See, e.g., United States v. Simpson, 546 F.3d 394, 397-98 (6th

Cir. 2008) (holding that Double Jeopardy Clause did not bar federal prosecution for escape after the Bureau of Prisons imposed sanctions for the related conduct); Mayes, 158 F.3d at 1224-25 (holding that Double Jeopardy Clause did not bar federal prosecution for riot-related crimes after defendants were sanctioned for related conduct); State v. Baker, 145 A.3d 955, 966 (Conn. App. Ct. 2016) (rejecting double jeopardy argument challenging sentence for possessing a weapon in a correctional institution, where defendant was already sanctioned administratively); Haney v. United States, 999 A.2d 48, 49 (D.C. 2010) (holding Double Jeopardy Clause did not bar criminal prosecution for assaulting corrections officer after inmate received term of "disciplinary segregation" and lost privileges for throwing feces and apparent urine at corrections officers); State v. Jones, 230 So.3d 22, 23 (Fla. Dist. Ct. App. 2017) (reversing dismissal of charges, holding "the Double Jeopardy Clause was never meant to impinge on remedial institutional discipline"); Commonwealth v. McGee, 744 A.2d 754, 759 (Pa. 2000) (holding that double jeopardy principles do not bar subsequent criminal prosecution where prison disciplinary action conforms to "the authorized administrative scheme, and . . . falls within the range of predictable punishment under the original sentence and can be justified on the basis of safe, orderly or efficient institutional administration").

In sum, we affirm the trial court's order denying Clark's motion to dismiss the indictment on double jeopardy grounds.

III.

We turn to the issue of Clark's sentence. The court imposed two terms of three years, flat — one term for each count of the indictment — to be served concurrently with each other, and consecutively to the sentence Clark was then already serving. That sentence apparently conformed to the terms of the written plea agreement that Clark executed.[4] However, it did not conform to Clark's actual plea. At the plea hearing, Clark pleaded guilty to only one count of assault. Therefore, the second three-year term shall be vacated.

The prosecutor stated she had nothing to add after defense counsel outlined the agreement that Clark "will plead guilty to [c]ount one of this indictment . . . . He'll plead guilty to a third-degree aggravated assault of a correction[]s officer." In questioning Clark, the court confirmed Clark's understanding that he was pleading to one count of the indictment, subjecting him to a single three-year term. In his allocution, Clark admitted to swinging a balled fist at the officer named in count one; and said nothing about assaulting

---

[4] The plea form identified both counts in the "list [of] the charges to which [defendant is] pleading guilty," but also referred to the indictment number in the "[l]ist [of] any charges the prosecutor has agreed to recommend for dismissal."

A-0324-18T2

the officer named in count two. The prosecutor expressed her satisfaction with the allocution, and the court accepted the plea.

Under those circumstances, the court's sentence two months later of three years on count two was plainly illegal, as defendant was not convicted of that count.[5] We reject the State's argument that we should remand for a hearing "to reconcile a discrepancy in the reco[r]d as to what charges defendant pleaded guilty to." We discern no uncertainty or ambiguity in the plea hearing. Regardless of what Clark may have agreed in the written plea agreement, the prosecutor expressed satisfaction with Clark's unambiguous plea to only one count of the indictment. In short, the State agreed to accept a plea to just one count. "[T]he terms and conditions of a plea bargain must be meticulously carried out." State v. Jones, 66 N.J. 524, 525-26 (1975). We therefore vacate the conviction for count two and remand for the court to correct the judgment of conviction.

Affirmed as to the denial of the motion to dismiss. Vacated as to the conviction on count two and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] A statement in the pre-sentence report that defendant pleaded guilty to both counts, and both counsels' failure to correct it, may explain the court's error.

17