DANIEL B. ROSETTY, PLAINTIFF, v. TOWNSHIP COMMIT-
TEE OF TOWNSHIP OF HAMILTON, IN THE COUNTY
OF MERCER, A BODY POLITIC IN THE STATE OF NEW
JERSEY, DEFENDANT.

Superior Court of New Jersey
Law Division

Decided January 20, 1964.

342

*Messrs. Pellettieri & Rabstein* for plaintiff.

*Mr. William A. Dietrich* for defendant.

BARLOW, J. C. C. (temporarily assigned). This is an action to recover back salary which plaintiff alleges is due and owing to him by defendant Township Committee of Township of Hamilton (hereinafter referred to as Township Committee).

On January 1, 1959 plaintiff Daniel B. Rosetty was duly appointed as the Building Inspector of defendant Township Committee, as then constituted, for the term of four years, with an annual salary of $7,752.00.

On June 29, 1961 the defendant, Township Committee, at a special meeting, passed the following resolution:

> "WHEREAS, charges have been made against Daniel B. Rosetty, Building Inspector of the Township of Hamilton in the County of Mercer and State of New Jersey, alleging that he did violate R. S. N. J. 2A:93–6 in that he obtained money in violation of the provisions of said Statute; and * * *
>
> THEREFORE, BE IT RESOLVED by the Township Committee that the said Daniel B. Rosetty be suspended as Building Inspector of said Township of Hamilton pending determination of said charges which said suspension shall be effective immediately."

Thereafter, by letter dated July 5, 1961, plaintiff was informed of his suspension, effective that date. He has not been paid, nor has he received any salary from and after that date.

Thereafter, the defendant apparently took no further steps, presumably awaiting the outcome of the criminal charges so instituted against the plaintiff. It was not until March 20, 1962 that the charges against the plaintiff were presented to the Grand Jury, which body declined to indict him, returning a "no bill" on that date. Plaintiff received no formal notice of the Grand Jury's action, although it is clear that informally he was aware of the Grand Jury's disposition thereof.

The plaintiff did not present himself for work or demand reinstatement at that time, nor did the defendant advise or

direct him to return to work following the Grand Jury's determination. Indeed, it appears nothing was done by either party for more than four months, or until July 30, 1962, when, at a special meeting of the Township Committee, the then township solicitor was instructed to prepare charges against plaintiff with an end to effecting his removal from office. The resolution, directing the preparation of charges, referred to the prior suspension of plaintiff and recited that such suspension was due to the fact that the plaintiff had been charged with a crime in that he had obtained money in violation of the provisions of *N. J. S.* 2A:93–6. The resolution did not, however, make any reference to a further suspension of plaintiff based on the new charges the defendant had directed its solicitor to prepare.

The charges were duly prepared, and were served upon the plaintiff on August 1, 1962. The charges allege that the plaintiff failed to perform the duties of Building Inspector either by:

"* * * willful act or by negligence in violation of the ordinance creating the position of Building Inspector * * * and/or violation of the Standard Building Code of New Jersey and the rules adopted pursuant thereto, which said Code has been adopted by the Township of Hamilton * * *."

Following that generalized description of the charges, there were recited seven specific instances in which the defendant alleged that the plaintiff had been guilty of a wilful act or negligence with respect to his official duties. All of the specific charges referred to alleged acts which took place prior to July 5, 1961, the date of the original suspension of plaintiff.

The charges thus preferred also contained the admonishment directed to the plaintiff that "unless you satisfactorily explain or defend the above charges you will be subject to the penalty of removal from office effective June 29, 1961," which, it will be noted, was the date of the adoption of the original resolution reciting the suspension of the plaintiff for alleged criminal activity.

· The specification of charges designated August 14, 1962 as the date upon which such charges would be heard, and apprised the plaintiff of his right to file an answer and of his right to appear and make his defense to these charges. On August 10, 1962 plaintiff filed an answer denying all of the charges and asserting separate defenses thereto. The hearing was thereafter continued to September 17, 1962, in order to afford plaintiff time within which to propound and serve interrogatories upon the defendant.

The plaintiff prepared interrogatories, which were served upon the defendant, but, for reasons not clear, answers to such interrogatories were not supplied, and the hearing was once again continued, apparently without date, and no date has since been fixed and no hearing has yet been held.

On December 31, 1962 the plaintiff's term expired and he was not reappointed. The plaintiff thereafter instituted this action to recover back salary, and now moves for summary judgment.

*N. J. S. A.* 40 :46–34 provides, in part, as follows:

"Whenever a municipal officer or employee, including any policeman or fireman, has been or shall be illegally dismissed or suspended from his office or employment, and such dismissal or suspension has been or shall be judicially declared illegal, he shall be entitled to recover the salary of his office or employment for the period covered by the illegal dismissal or suspension; provided, that a written application therefor shall be filed with the clerk of the municipality within thirty days after such judicial determination, * * *"

There can be no quarrel with the propriety of the original suspension of the plaintiff, resulting, as it did, from the filing of a criminal complaint against the plaintiff.

 However, while the suspension of a municipal officer may be in all respects proper and legal at its inception, subsequent events may render that suspension illegal *ab initio*. See *Strohmeyer v. Borough of Little Ferry*, 6 *N. J. Super.* 282 (*App. Div.* 1950); *Rozmierski v. City of Newark*, 42 *N. J. Super.* 14 (*Law Div.* 1956); *Graham v. City of Asbury Park*, 69 *N. J. Super.* 256 (*App. Div.* 1961), affirmed 37 *N. J.* 166

(1962); *D'Ippolito v. Maguire, 33 N. J. Super. 477 (App. Div.* 1955). Furthermore, it is equally clear that, pending the disposition of the criminal charges made against plaintiff, the defendant was not required to afford the plaintiff a hearing, since the undisposed of charges, which form the basis of the suspension, were criminal and not departmental in nature. See *Graham v. City of Asbury Park, supra.* It seems clear that the moment the criminal charges were disposed of—such charges being the only announced basis for the suspension— by the disinclination of the Grand Jury to indict the plaintiff, and by the consequential dismissal of the complaint, the defendant was duty-bound immediately to advise the plaintiff that his period of suspension was terminated and that he was reinstated, or, if departmental charges were pending, or were contemplated, to promptly apprise plaintiff of these charges and to advise him that his suspension was continued by reason thereof. Moreover, if departmental charges were to be made, it was incumbent upon the defendant to move expeditiously for a hearing and the ultimate disposition of such charges.

██ By defendant's failure to either reinstate the plaintiff or advise him of contemplated departmental charges, the original suspension of the plaintiff, having no foundation upon which to rest, became ineffective and thereby illegal, within the fair intendment of the Legislature, as reflected by the language of *N. J. S. A.* 40:46–34.

The suspension of the plaintiff having become illegal, it remained illegal until August 1, 1962, when departmental charges were finally preferred and served upon plaintiff.

██ While it is true that the specification of charges served upon the plaintiff attempted to make the plaintiff's suspension by reason of such departmental charges retroactively effective, and to relate the suspension back nearly thirteen months to the date of the original suspension, which had long since expired, such an attempt to revive and breathe life into what had become an illegal suspension is clearly ineffectual.

The defendant insists, however, that when the initial suspension, although valid when instituted, was subsequently

rendered illegal when the Mercer County Grand Jury returned a "no bill" and thereby dismissed the charges contained in the complaint, such action on the part of the Grand Jury constituted a "judicial determination," and that the plaintiff, if he is to recover salary due him for the period of such illegal suspension, must have filed a "written application" therefor within "thirty days after such judicial determination," and that the plaintiff, having failed to heed that requirement of the statute, is not entitled to recover such back salary.

Clearly, the action of the Mercer County Grand Jury in returning a "no bill" did not constitute a "judicial determination" within the plain intendment of the act. A "grand jury" is an "inquisitorial, informing, and accusing body, but is generally not regarded as a judicial body or tribunal; it always proceeds *ex parte,* and it is not a trial body or the ultimate fact finder." (*In re Neff,* 206 *F.* 2d 149, 152, 36 *A. L. R.* 2d 1398 (3 *Cir.* 1953).) See 38 *C. J. S. Grand Juries,* § 1a, *p.* 980. The grand jury is regarded as an informing or accusing body rather than as a judicial body or tribunal. See, also, 24 *Am. Jur. Grand Jury, par.* 2. Furthermore, the word "judicial," in its more technical sense, "imports an act, duty, function, or power pertaining to the judiciary or the administration of justice, relating to such bodies or officers as have the power of adjudicating personal and property rights * * * belonging to or emanating from a judge as such; consisting of, or resulting from, legal inquiry or judgment; of, or belong to, a court of justice, or a judge." 50 *C. J. S. Judicial, p.* 559.

It is apparent that a finding, determination or pronouncement of a grand jury is not judicial in character. The primary function of a grand jury is to hear evidence against persons accused of crimes and to make a determination, based on the evidence presented, as to whether or not the person so charged shall be required to stand trial on such charges. An indictment returned by a grand jury is but a "formal charge" and in no sense reflects an ultimate disposi-

tion of such criminal charge. The return of a grand jury of a "no bill" is determinative of nothing more than the fact that that particular grand jury, at that particular time, found that the proof presented was insufficient to establish either that a crime had been committed or, if a crime had been committed, that the accused should be charged with its commission. Indeed, the same grand jury, or its successor, might properly, within the period of the statute of limitations, review and reconsider the charges and return an indictment against an accused.

It is evident, therefore, that the Grand Jury's action in this case did not constitute a "judicial determination" in the sense contemplated by the Legislature, and that the plaintiff's application for back salary may not be defeated by his failure to make written application therefor within the prescribed statutory period following the Grand Jury's disposition of the complaint against him.

Accordingly, where, as here, no "judicial determination" is ever made because no proceeding or hearing capable of producing the requisite "judicial determination" has ever been accorded the plaintiff, then, manifestly, the judicial determination of the illegality of the suspension may be pronounced by this court as incidental to its ultimate determination in an action instituted by the plaintiff seeking to recover back salary. See *Morrissey v. Holland*, 79 *N. J. Super.* 279 (*Law Div.* 1963). If this were not so, an illegally discharged employee might be denied recovery of salary due and owing to him by the simple expedient of never according him a hearing.

The defendant argues that if, by reason of the Grand Jury's disposition of the charges against plaintiff and the ensuing dismissal of the criminal complaint, the original suspension is considered as having been rendered illegal, it follows that the plaintiff was then obliged to return to work and to resume the duties of his office. That the plaintiff, having failed to do so, may not now make any claim for salary which

accrued after that date for the simple reason that since that time the plaintiff performed no services for which he can claim salary was due and owing to him.

As an abstract argument, this contention of the defendant might contain some merit, but when it is viewed against the circumstances of this case it is palpably deficient, since it is obvious, in view of the subsequent departmental charges made against plaintiff, that the defendant had no intention of reinstating the plaintiff at any time following the disposition of the charges against him by the Grand Jury, and it is equally clear that the plaintiff would not have been permitted to resume his duties, despite any demand he might have made to be allowed to do so.

The defendant, it follows, hardly can be permitted to defeat plaintiff's application for back salary due him but not paid to him during an illegal suspension from office, by arguing that in order to recover such back salary the plaintiff was required to do something, or take some action, which the defendant obviously had no intention of permitting him to accomplish. The plaintiff, therefore, with respect to the period from July 5, 1961 to August 1, 1962, during which time he was illegally suspended, is entitled to the salary due and owing him for that period, with interest to date.

The rights of the plaintiff, for salary due him for the period from August 1, 1962 until December 31, 1962, are incapable of determination on this motion for summary judgment, since there has been no hearing on the merits of the departmental charges preferred against the plaintiff by the defendant.

While there is no specific statutory provision providing for the suspension or removal of a township building inspector who has been appointed for a specific term of office, the general rule that an officer whose tenure of office is for a fixed period cannot be removed except for good cause shown after a hearing is applicable to the circumstances of the present case.

"In the absence of statutory authority, an officer holding for a definite term is not removable at pleasure, but only for cause." (62 *C. J. S. Municipal Corporations* § 507, *p.* 947.)

The cases are collected in Annotation, 99 *A. L. R.* 336, 363, where it is explained that:

"The basis for the rule is that definiteness of the term indicates that the officer is entitled to hold office for the full time for which he was appointed or elected, unless in the meantime removed for substantial cause, the necessity of cause for a removal implying that there shall be a hearing as to the existence of the cause." (99 *A. L. R.*, *p.* 364)

The rule has long been followed in New Jersey. In *Murphy v. Board of Chosen Freeholders of Hudson County*, 92 *N. J. L.* 244, 246 (*E. & A.* 1918), the Court of Errors and Appeals adopted with approval the language of the Supreme Court of Michigan and noted the application of the general rule in New Jersey:

" 'We have not found any case where an officer who was appointed for a fixed term (and when the power of removal was not expressly declared by law to be discretionary), has been held to be removable except for cause, and wherever cause must be assigned for the removal of the officer he is entitled to notice and a chance to defend.' *Hallgren v. Campbell*, 82 *Mich.* 255, 46 *N. W.* 381, 9 *L. R. A.* 408.

This principle, as applied to the removal of public officers, has been discussed and recognized in a long line of cases, in our own courts: *Clark v. Ennis*, 45 *N. J. L.* 69; *State ex rel. Board of Police Com'rs of Jersey City v. Pritchard*, 36 *N. J. L.* 101, 111; *Haight v. Love*, 39 *N. J. L.* 14, 21; affirmed, 39 *N. J. L.* 476."

In *Weinberger v. Hilfman*, 8 *N. J. Misc.* 32, 148 *A.* 176 (*Sup. Ct.* 1929), the City Counsel of Passaic was suspended during his term of office without a hearing, and another person was appointed for the balance of his term. The court noted that the action of the municipality amounted to a summary removal from office and held (8 *N. J. Misc.*, at *p.* 34):

"The only power of removal during the term of office of relator was for cause and after public hearing. No cause of removal was given and no public hearing was had.

The conclusion is obvious that the removal of the relator being without warrant of law was a nullity and of no effect."

See, also, *Krieger v. Jersey City*, 48 *N. J. Super.* 280, 283 (*App. Div.* 1958), affirmed 27 *N. J.* 535 (1958).

It is elementary, of course, that right to a public hearing implies that such hearing shall be promptly accorded any such suspended employee. However, it is not clear from the memoranda and the pleadings filed herein whether or not the delay in the holding of the departmental hearing has been occasioned solely by the defendant. Indeed, it appears that at least part of the delay is attributable to the defendant's request for discovery. While it might be urged that the departmental hearing is now moot in view of the fact that the plaintiff's term of office has expired, such a hearing is not moot with respect to the claim of plaintiff for back salary for the period in which such departmental charges were pending. Accordingly, plaintiff is entitled to recover all salary due, but not paid to him, with interest, from July 5, 1961, to July 31, 1962. That part of the plaintiff's motion relating to salary due him for the period from August 1, 1962 to December 31, 1962 is denied, since it does not admit of a summary judgment at this time.

If the contemplated hearing is to be held, it should be held forthwith, and the determination of the merits of the plaintiff's application for that portion of the salary claimed to be due and owing him must necessarily await that event.