NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2058-15T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JEROME SHAW, JR., JEROME
SHAW, JERONE SHAW, JR.,
and ROME,

    Defendant-Appellant.

_____

Submitted January 29, 2018 — Decided July 23, 2018

Before Judges Sabatino, Ostrer and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Bergen County, Indictment No.
13-04-0591.

Joseph E. Krakora, Public Defender, attorney
for appellant (Anderson D. Harkov,
Designated Counsel, on the brief).

Dennis Calo, Acting Bergen County
Prosecutor, attorney for respondent (Michael
R. Philips, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Jerome Shaw, Jr., appeals from his conviction and

sentence after he pleaded guilty to third-degree conspiracy to

commit burglary, N.J.S.A. 2C:5-2, N.J.S.A. 2C:18-2, and disorderly persons possession of burglary tools, N.J.S.A. 2C:5-5(a). After a grand jury refused to indict, the State resubmitted the case to a new grand jury, which voted an indictment. The court sua sponte dismissed that indictment and the State resubmitted again, this time with an additional witness, and secured a second indictment. Defendant contends the court should have dismissed that indictment, too, because the evidence was not materially different; and a grand jury witness disclosed defendant's admission that he had "some prior criminal history." Defendant also argues the court erred in denying his motion to suppress evidence, including various burglary tools, seized after a traffic stop. Lastly, he argues his five-year sentence was excessive, and the court imposed a longer period of parole ineligibility than it promised.

While the prosecutor's power to resubmit cases to a grand jury is not boundless, we need not chart the limits on successive grand jury resubmissions to conclude there was no basis shown here to warrant dismissal of the indictment. Only one successive grand jury was required to secure an indictment. After the court dismissed that indictment (mistakenly, we conclude, for reasons discussed below), the State presented additional evidence, and a third grand jury voted a second

indictment. The evidence supporting the State's case was strong. There is no proof of prosecutorial vindictiveness or an abusive exercise of prosecutorial discretion. Nor did defendant show that resubmission was unduly burdensome, or that it deprived him of fundamental fairness. Furthermore, the passing reference to defendant's criminal history did not deprive him of a fair grand jury presentation.

Also, the trial court correctly denied the motion to suppress. Lastly, although the sentence was not excessive, we remand for reconsideration of the parole ineligibility term.

## I.

Upper Saddle River Police Officer Emmett McDowell performed a traffic stop in Saddle River after defendant and his father, co-defendant Jerome Shaw, Sr. (Senior), were backing a truck out of a driveway onto West Saddle River Road into McDowell's path. Senior was behind the wheel. McDowell said he had to slam on his brakes to avoid "t-bon[ing]" the truck.

After he approached defendant's truck, McDowell began to suspect something more than a traffic violation was afoot. The two men were dressed almost head to toe in black, including black shoes and coveralls; they appeared nervous. Senior had a New York driver's license, but the truck had North Carolina plates and was registered to a woman. A rifle case — the sort

used to carry assault rifles — was visible on the rear seat. Asked what was in the case, Senior said it contained construction tools, and invited McDowell to look for himself.

Saddle River Police Officer Edward Riedel arrived to assist McDowell. After Senior was asked to exit the truck, Riedel questioned defendant about the rifle case's contents. As did his father, defendant invited the officer to look for himself. Riedel removed the rifle case and opened it. It contained several pry bars, a large mallet, some pipe wrenches, several zip ties of various sizes, knee pads, and cutting instruments. Some of the tools were brand new, with their price tags still attached. The two men claimed to be on construction jobs, although it was after 1:00 a.m. and they were in a residential area. They could not say where they were working. They gave contradictory explanations of the nature of the work they did, and the kind of properties they worked on. Riedel saw black ski masks and gloves on the floor of the truck, although it was a mild October evening. They also claimed to be lost and looking for Route 17, but there was a GPS device in the vehicle. Riedel suspected the two men were planning to commit a burglary, or already had committed one.

Once Riedel asked defendant to step out of the truck, defendant could produce no identification. He was acting

nervously. He disclosed he had previously been arrested for weapons offenses. Riedel then patted defendant down, and seized a small flashlight. Defendant and Senior were arrested and searched incident to arrest. The officers seized from defendant a list of six residences in Saddle River and Mendham. They seized from Senior a flashlight and a tennis-ball-sized rock. Aside from the rifle case's contents, the other items in the truck were seized pursuant to a search warrant.

The first grand jury, which heard Riedel generally recount these facts, declined to indict. A month later, the State re-presented the case through Riedel's testimony to a second grand jury, which returned an indictment. However, the presiding criminal judge dismissed the indictment on her own motion. She did so after the clerk informed her that the second indictment involved the same complaint-warrant and the same witness as the first presentment.[1] The judge later explained that she was enforcing what she called "the multiple presentation rule," which, she said, provides "you can't go to the grand jury more than once on the same facts."

Shortly thereafter, the State presented the case to a third grand jury. Of relevance to one of defendant's points on

---

[1] The record does not include the transcript of the grand jury's return of the indictment, nor does it include the court's order of dismissal.

appeal, Riedel softened defendant's admission that he had weapons arrests. Explaining his decision to pat down defendant, Riedel testified, "Eventually he admitted to some prior criminal history that raised my suspicion . . . ."

In addition to Riedel, the State for the first time called Captain Timothy Condon of the Bergen County Prosecutor's Office, as an expert in burglary investigations. Condon supplemented Riedel's opinion that the circumstances indicated that defendant and Senior were planning to commit burglary. Condon highlighted that burglars often use new tools, to avoid preserving evidence on the tools of previous burglaries. By contrast, people actually involved in construction usually have well-worn tools. He opined the zip ties were likely intended for restraining occupants of a home. The rocks were to be used to break windows. The black attire was designed to avoid detection. He viewed defendant's list of addresses as a "hit list." He also noted that defendant possessed a hand truck, which he could have used to remove a safe.

The third grand jury returned an indictment, which, in addition to the conspiracy count to which defendant later pleaded guilty, charged six counts of third-degree attempted burglary, N.J.S.A. 2C:5-1, N.J.S.A. 2C:18-2 — for each residence on defendant's list — as well as three counts of third-degree

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), characterizing a sledgehammer, mallet, and prybar as weapons.

In support of his motion to dismiss the indictment, defendant's counsel argued that the State abused the grand jury process by resubmitting the case without judicial approval, and without presenting materially different evidence. Defendant also objected to the reference to defendant's criminal history. The court denied the motion, finding that Condon offered new and additional evidence. The court did not address the point about defendant's criminal history.

The court thereafter conducted an evidentiary hearing on defendant's motion to suppress the evidence seized as a result of the traffic stop, and subsequent searches. McDowell and Riedel testified, generally recounting the facts summarized above. The court denied the motion. The court held that the initial stop was justified, because defendant blocked traffic. Other circumstances — the time, the out-of-state plates, the black attire, and the rifle case — warranted further investigation. The court held that the warrantless search of the rifle case was justified based on consent and the plain view doctrine. The gloves, masks, goggles, and GPS unit were also in plain view, although police awaited a warrant before seizing

them. The pat-down of defendant and seizure of the flashlight were justified by a reasonable safety concern; and the seizure of other items on defendant's and Senior's persons was properly based on searches incident to arrest.

Following denial of his pre-trial motions, defendant entered his guilty plea before a different judge. The plea agreement with the State called for a five-year term, with a two-year parole bar, but the judge promised to impose a twenty-month parole bar. The sentence was to be concurrent to a North Carolina sentence defendant was already serving.

At the sentencing hearing, the judge noted defendant, then thirty-five years old, had an extensive, multi-state criminal record, which supported finding aggravating factors three, N.J.S.A. 2C:44-1(a)(3) (risk of re-offense); six, N.J.S.A. 2C:44-1(a)(6) (extent of prior criminal record and seriousness of offenses); and nine, N.J.S.A. 2C:44-1(a)(9) (need to deter defendant and others). Those factors substantially outweighed mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) (imprisonment would be excessive hardship on dependents). Defendant had a young child.

Although he stated he would honor the plea agreement, the judge imposed a parole bar of two years instead of twenty months

on the five-year term. The ensuing judgment of conviction did not reflect any parole bar.

On appeal, defendant raises the following points for our consideration:

POINT ONE
THE INDICTMENT AGAINST DEFENDANT SHOULD HAVE BEEN DISMISSED DUE TO THE INHERENT PREJUDICE OF THE GRAND JURY BEING TOLD DEFENDANT HAD A PRIOR CRIMINAL HISTORY AND BECAUSE THE STATE PRESENTED THE SAME EVIDENCE TO THREE SEPARATE GRAND JURIES BEFORE IT FINALLY OBTAINED AN INDICTMENT.

POINT TWO
THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED AS A RESULT OF A WARRANTLESS SEARCH BECAUSE THE POLICE OFFICERS CONDUCTED AN IMPROPER INVESTIGATORY DETENTION, FOLLOWED BY AN ILLEGAL WARRANTLESS SEARCH OF THE RIFLE CASE THEY REMOVED FROM DEFENDANT'S VEHICLE. THE SUBSEQUENT WARRANTLESS SEARCHES, AND THE SEARCH WARRANT OBTAINED THEREAFTER, WERE THE "FRUIT" OF THAT ILLEGAL SEARCH, CONTRARY TO THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

POINT THREE
DEFENDANT'S SENTENCE WAS EXCESSIVE AND CONSTITUTED AN ABUSE OF DISCRETION, REQUIRING HIS SENTENCE BE VACATED AND THE CASE RETURNED TO THE TRIAL COURT FOR A NEW SENTENCE HEARING.

POINT FOUR
THE DISCREPANCY BETWEEN THE PLEA AGREEMENT, SENTENCING TRANSCRIPT, AND JUDGMENT OF CONVICTION MUST BE CLARIFIED.

Defendant contends the grand jury proceedings were defective because: (1) the State resubmitted the matter to multiple grand juries, and presented the same evidence, despite offering a new witness at its third presentation; and (2) elicited information that defendant had a criminal history. In response, the State contends, without qualification, "[a] prosecutor may resubmit a previously no-billed case to any grand jury at any time within the statute of limitations . . . ."

Although an abuse of discretion standard generally governs our review of a trial court's decision on a motion to dismiss an indictment, we review de novo a decision that "relies on a purely legal question . . . ." State v. Twiggs, ___ N.J. ___, ___ (2018) (slip op. at 20). In reviewing the "decision of a trial court to dismiss [or not dismiss] an indictment with prejudice[, we] must ensure that the correct standard was employed by the trial court." State v. Abbati, 99 N.J. 418, 436 (1985). We are also free to affirm a trial court's decision on grounds other than those the trial court relied upon. Hayes v. Delamotte, 231 N.J. 373, 386-87 (2018); State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011).

To address defendant's resubmission argument, we first consider basic principles pertaining to the grand jury, the prosecutor's charging discretion, and the court's authority to assure fundamental fairness. "No person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury . . . ." N.J. Const. art. I, ¶ 8. A defendant is entitled to a "fundamentally fair grand jury presentation." State v. Grant, 361 N.J. Super. 349, 356 (App. Div. 2003). "The purposes of the grand jury extend beyond bringing the guilty to trial. Equally significant is its responsibility to 'protect[] the innocent from unfounded prosecution.'" State v. Hogan, 144 N.J. 216, 228 (1996) (quoting State v. Murphy, 110 N.J. 20, 29 (1988)). "The grand jury serves an important and historic purpose in standing between the defendant and the power of the State, protecting the defendant from unfounded prosecutions." State v. Fortin, 178 N.J. 540, 638 (2004).

Noting that many other states have dispensed with the grand jury entirely, our Court observed, "In New Jersey, the grand jury remains a constitutional bulwark against hasty and ill-founded prosecutions and continues to lend legitimacy to our system of justice by infusing it with a democratic ethos." Ibid. "[T]he right to indictment in the State Constitution

indicates that the grand jury was intended to be more than a rubber stamp of the prosecutor's office." Hogan, 144 N.J. at 236. "Our State Constitution envisions a grand jury that protects persons who are victims of personal animus, partisanship, or inappropriate zeal on the part of a prosecutor." Ibid.

Yet, an indictment should not be dismissed "except on 'the clearest and plainest ground' and an indictment should stand 'unless it is palpably defective.'" State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 18-19 (1984) (quoting State v. Weleck, 10 N.J. 355, 364 (1952)). Our Supreme Court has declared the general principle that "[a] trial court . . . should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case." State v. Morrison, 188 N.J. 2, 12 (2006).

Before the grand jury may exercise its power, the prosecutor must make the discretionary decision to present the case. The prosecutor's "duty is not merely to prosecute the guilty but to protect the innocent as well." Abbati, 99 N.J. at 434. Our Court has recognized that the prosecutor's charging power is broad, but not boundless. Upon clear and convincing proof of a patent and gross abuse of discretion, a court may set aside a refusal to admit a defendant to pre-trial intervention.

See State v. K.S., 220 N.J. 190, 200 (2015) (noting "[t]his discretion arises out of 'the fundamental responsibility of prosecutors for deciding whom to prosecute'") (quoting State v. Dalglish, 86 N.J. 503, 509 (1981)); State v. Leonardis, 73 N.J. 360, 382 (1977) (recognizing the "patent and gross abuse of discretion" standard); State v. Childs, 242 N.J. Super. 121, 129 (App. Div. 1990) (stating that the prosecutor's broad discretion, while "not boundless, . . . may only 'be reviewed for arbitrariness or abuse'") (quoting In re Investigation Regarding Ringwood Fact Finding Comm., 65 N.J. 512, 516 (1974)).

Separate from the court's authority to review prosecutorial discretion, see Abbati, 99 N.J. at 433-34 (noting that the prosecutor's office "has never been regarded as free from judicial supervision and control"), is the court's inherent authority to dismiss an indictment with prejudice to assure fundamental fairness. "Thus, the prosecutor's decision to reprosecute [after successive mistrials] is not immune from judicial supercession even absent a finding of abuse of prosecutorial discretion." Id. at 434. "The anxiety, vexation, embarrassment and expenses to the defendant of continual reprosecution where no new evidence exists is a proper subject for the application of traditional notions of fundamental fairness and substantial justice." Id. at 430. The Supreme

Court held that "a trial court [after considering multiple factors] may dismiss an indictment with prejudice after successive juries have failed to agree on a verdict when it determines that the chance of the State's obtaining a conviction upon further retrial is highly unlikely." Id. at 435.[2]

The Court invoked Abbati in stating that it "would reflect an appropriate exercise" of the court's inherent authority to dismiss an indictment where the grand jury process was tainted by an unconstitutional criminal investigation. State v. Sugar,

---

[2] In deciding whether to dismiss an indictment with prejudice after successive mistrials, a trial court must consider:

> (1) the number of prior mistrials and the outcome of the juries' deliberations, so far as is known; (2) the character of prior trials in terms of length, complexity, and similarity of evidence presented; (3) the likelihood of any substantial difference in a subsequent trial, if allowed; (4) the trial court's own evaluation of the relative strength of each party's case; and (5) the professional conduct and diligence of respective counsel, particularly of the prosecuting attorney. The court must also give due weight to the prosecutor's decision to reprosecute, assessing the reasons for that decision, such as the gravity of the criminal charges and the public's concern in the effective and definitive conclusion of criminal prosecutions. Conversely, the court should accord careful consideration to the status of the individual defendant and the impact of a retrial upon the defendant in terms of untoward hardship and unfairness.
>
> [Abbati, 99 N.J. at 435.]

100 N.J. 214, 245 n.4 (1985) (citing <u>Abbati</u>, 99 N.J. at 418).[3] We therefore surmise that the grand jury process is subject to review based on the judiciary's inherent authority to assure fundamental fairness.

B.

Turning to the issue of resubmission of cases to successive grand juries, we are aware of no New Jersey statute or common law precedent — and defendant points to none — that categorically bars a prosecutor from choosing to resubmit a case to a new grand jury after one has previously voted a no bill, or requires the State to present new evidence as a condition of resubmission. Consequently, we find no basis for the trial court's pronouncement of the "multiple presentation rule" that conditions resubmission on the presentation of new evidence.

The Attorney General has not established any standard limiting resubmission. The manual promulgated by the Attorney General and the County Prosecutors Association provides:

> Nor does the fact that a grand jury has considered the matter and voted a no-bill legally bar re-presentation of the matter to the grand jury, because the return of a no-bill reflects nothing more than the fact that a particular grand jury at a particular time found that the proofs presented to it

---

[3] In <u>Sugar</u>, the Court suggested that the State could "proceed anew" with evidence "unsullied by the constitutional violations that occurred." 100 N.J. at 245 n.4.

were insufficient to establish the commission of a crime or the participation in a crime of a particular accused.

[New Jersey Grand Jury Manual 95 (Dep't of Law & Pub. Safety et al. eds., 4th ed. 1993).][4]

A trial court addressed the issue of resubmission in a civil case. Rosetty v. Twp. Comm. of Hamilton Twp., 82 N.J. Super. 340, 349 (Law Div. 1964), aff'd o.b., 96 N.J. Super. 66 (App. Div. 1967). In holding that a no bill was not proof of a person's innocence, the trial court noted, "[T]he same grand jury, or its successor, might properly, within the period of the statute of limitations, review and reconsider the charges and return an indictment against an accused." Ibid. However, the statement in Rosetty is not the end of our analysis, because the statement was not essential to the court's decision, and the court did not address whether there are limitations on resubmission.

The prevailing view in other jurisdictions is that there is no general limitation on a prosecutor's power to resubmit matters to a second grand jury after failing to secure an indictment from the first. See Wayne R. LaFave et al., Criminal

---

[4] By contrast, the United States Attorney's Manual, "suggests that representment not occur 'in the absence of additional or newly discovered evidence or a clear circumstance of a miscarriage of justice.'" United States. v. Pabian, 704 F.2d 1533, 1538 (11th Cir. 1983).

_Procedure_, § 15.2(h) (4th ed. 2015); Sara Sun Beale et al., _Grand Jury Law & Practice_, § 8:6 at 8-56 to 8-65 (2d ed. 2015). In particular, "[t]he longstanding federal rule is that resubmissions are permissible, without court approval, even when the prosecutor presents no additional evidence to the second grand jury." LaFave, § 15.2(h) at 535.

The United States Supreme Court has declared, "[T]he power and duty of the grand jury . . . is not exhausted or limited by adverse action taken by a previous grand jury, and . . . a United States district attorney may present, without leave of court, charges which a previous grand jury has ignored." _Ex parte United States_, 287 U.S. 241, 250-51 (1932); _see also United States v. Thompson_, 251 U.S. 407, 413-15 (1920) (rejecting the argument that the prosecutor needed judicial approval to resubmit charges to a new grand jury upon virtually the same evidence that failed to persuade a prior grand jury); _United States v. Claiborne_, 765 F.2d 784, 794 (9th Cir. 1985) (holding "that the prosecution's presentation of evidence to three grand juries . . . violated no procedural rule or judicially-imposed limits on a grand jury's investigatory role," where the third grand jury voted to indict after the first two did not). "The Double Jeopardy Clause of the Fifth Amendment does not bar a grand jury from returning an indictment when a

prior grand jury has refused to do so." United States v. Williams, 504 U.S. 36, 49 (1992) (first citing Ex parte United States, 287 U.S. at 250-51; then citing Thompson, 251 U.S. at 413-15).

Statutes in a minority of states require judicial approval of a second presentment. LaFave, § 15.2(h) at 536; see also Beale, § 8:6 at 8-56 n.1, 8-60 n.10 (listing states that restrict submission by statute or court rule). Typically, those courts have required a showing of newly discovered evidence. LaFave, § 15.2(h) at 536-37. For example, in People v. Ladsen, 444 N.Y.S.2d 362, 364-66 (Sup. Ct. 1981), a New York trial court applied N.Y. Crim. Proc. Law § 190.75 (1977), which states that a dismissed charge may not be resubmitted to a grand jury "unless the court in its discretion authorizes or directs the people to resubmit such charge to the same or another grand jury." The court held that the presentation of new evidence justified the resubmission. Ladsen, 444 N.Y.S.2d at 365-66. Alternatively, at least one state — Georgia — has statutorily imposed a fixed limit of two presentations, except newly discovered evidence or fraud by the defendant may justify a third. See Ga. Code Ann. § 17-7-53 (2018). However, New Jersey has not adopted a statutory restriction on resubmission.

The underlying rationale of the federal approach is that "the power and duty of the grand jury to investigate . . . is continuous and is therefore not exhausted or limited by adverse action [previously] taken by a grand jury or by its failure to act." LaFave, §15.2(h) at 536 (quoting Thompson, 251 U.S. at 413). Requiring judicial approval of resubmission would undermine "the power of grand juries, and the right of the Government to initiate prosecutions for crime . . . ." Thompson, 251 U.S. at 415.

Also, completely denying a prosecutor the right to resubmit would deprive the prosecutor of the benefit of a continuing investigation that produces additional evidence of guilt. See Beale, § 8:6 at 8-57. A failure to secure an indictment because of insufficient evidence may occur "because the prosecutor for strategic reasons decided not to reveal the evidence it had already gathered." Andrew Leipold, Why Grand Juries Do Not (and Cannot) Protect the Accused, 80 Cornell L. Rev. 260, 291 (1995); see also Beale, § 8:6 at 8-57 (noting that barring resubmission would penalize the government for presenting "an abbreviated version of [its] case for the sake of efficiency and convenience"). Preventing a prosecutor from resubmitting would also deny a means of correcting a grand jury's "erroneous

refusal" to indict, which "is not subject to judicial review." Ibid.[5]

On the other hand, "allowing re-submissions prevents the grand jury from acting as an effective check on the prosecutor," and disincentivizes the prosecution from presenting its most complete case in what would be its first and only chance for an indictment. Ric Simmons, Re-examining the Grand Jury: Is There Room for Democracy in the Criminal Justice System?, 82 B.U. L. Rev. 1, 19 (2002). Commentators have noted how infrequently grand juries actually screen out charges in the first place. See, e.g., Leipold, 80 Cornell L. Rev. at 271-72. To permit a prosecutor to resubmit charges, even in those rare instances, at least absent new and materially different evidence, may dilute the grand jury's fundamental role, as stated in Hogan, 144 N.J. at 228 (quoting Murphy, 110 N.J. at 29), "to 'protect[] the innocent from unfounded prosecution.'"

---

[5] For example, if the target of a grand jury presentment enjoys broad public support, it may be difficult to secure an indictment although the State's evidence is strong. See Leipold, 80 Cornell L. Rev. at 309 (noting that "a refusal to indict may also be based on prejudice against the crime victim, bias in favor of the target, or other illegitimate reasons"). Preserving discretion to resubmit enables the prosecution to combat such grand jury predisposition. Cf. People v. Dykes, 449 N.Y.S.2d 284, 288 (App. Div. 1982) (stating although resubmission should occur sparingly, it is appropriate when a grand jury "fail[s] to give a case a complete and impartial investigation").

Just as "repeated attempts to convict an individual . . . enhanc[es] the possibility that even though innocent he may be found guilty," Abbati, 99 N.J. at 430 (quoting Green v. United States, 355 U.S. 184, 187-88 (1957)), repeated resubmissions to a grand jury enhances the possibility that an innocent person will be indicted. See Niki Kuckes, The Useful, Dangerous Fiction of Grand Jury Independence, 41 Am. Crim. L. Rev. 1, 49 (2004) (contending that the prosecutor's power, rather than the grand jury's, is enhanced by the rule that "[t]he prosecutor is not bound by one grand jury panel's decision to reject an indictment, but can simply seek the same indictment from another grand jury panel").

Some courts have indicated that, even in the absence of statutory limitations, the power to resubmit is not boundless nor immune from judicial control. In Commonwealth v. McCravy, the Massachusetts Supreme Judicial Court stated it "would bear consideration" whether "submission of the same evidence to multiple grand juries would be inconsistent" with the purpose of grand juries "to shield 'the innocent against hasty, malicious and oppressive public prosecutions.'" 723 N.E.2d 517, 522 (Mass. 2000) (quoting Jones v. Robbins, 74 Mass. 329, 344 (1857)). However, the court held that "[r]esubmission of the same evidence to two grand juries present[ed] no such

difficulty." Ibid. The court in In re United States, 441 F.3d 44, 63 (1st Cir. 2006), declined to "decide whether there can be some form of impermissible grand jury shopping which would warrant court inquiry."

Our Supreme Court has parted with the United States Supreme Court's more limiting view of judicial oversight of grand jury proceedings. See Hogan, 144 N.J. at 231, 236-37 (rejecting the view in Williams, 504 U.S. at 55, and holding that the prosecutor is obliged to present clearly exculpatory evidence to a grand jury). Consistent with that independent view, as well as the principles enunciated in Hogan, Leonardis, and Abbati, we are confident our Court would place some limits on successive resubmissions, in order to respect the grand jury's screening function to shield the innocent; control the abusive exercise of prosecutorial discretion; and assure defendants fundamental fairness.

C.

However, we need not map the boundaries of those limits in this case. Mindful of the respective roles of the grand jury, prosecutor, and court, we conclude the trial court did not err in refusing to dismiss the indictment returned by the third grand jury. We are satisfied that the State presented new and material evidence to that third panel. Notably, the Court in

22                                        A-2058-15T3

Abbati addressed the court's exercise of inherent authority to dismiss an indictment with prejudice to prevent retrials "where no new evidence exists." 99 N.J. at 430. Condon's opinion testimony not only corroborated Riedel's testimony, but in some respects supplemented it, by providing greater details as to the significance of the tools and equipment that defendant and his father possessed.

Moreover, each panel fulfilled a fundamental purpose of the grand jury. The first protected defendant from what fewer than twelve grand jurors concluded was a well-founded prosecution, although the second grand jury found sufficient evidence to indict. See R. 3:6-8 (requiring concurrence of twelve or more jurors in return of indictment); R. 3:6-1 (requiring grand juries not exceeding twenty-three members). The third grand jury, based on expanded evidence, brought to trial someone there was probable cause to believe committed a crime.

Also, defendant presents no evidence of an abuse of prosecutorial discretion. He exaggerates the record in asserting "the prosecutor kept presenting the same evidence to different grand juries until a grand jury produced a true bill." The State obtained an indictment upon just the second presentment. The trial court dismissed the indictment on its own motion, based on its understanding that the State was

obliged to present new evidence. The State submitted the matter to a third grand jury, adding a witness, evidently to comply with the judge's view of the law. Two out of three grand juries found, based on the evidence presented, there was probable cause defendant committed the crimes charged. This is not a situation in which a prosecutor "grand jury shopped" a weak case to multiple grand juries until, finally, a compliant panel was found.

Given the substantial weight of the State's evidence, and the significance of the crimes alleged, we discern no abuse of the prosecutor's broad discretion, let alone a patent and gross abuse of discretion, in persisting to seek an indictment against defendant after the first, and only the first, grand jury declined to return one. See Leonardis, 73 N.J. at 382; Childs, 242 N.J. Super. at 129. In light of the circumstances, that conclusion would apply, even absent the new evidence presented to the third grand jury.

The strength of the State's case, and presentation of new evidence, would also negate finding that resubmission deprived defendant of fundamental fairness. See Abbati, 99 N.J. at 435 (predicating dismissal of indictment with prejudice after successive mistrials "when [the court] determines that the chance of the State's obtaining a conviction upon further

retrial is highly unlikely"). Defendant also has not proved that the resubmissions here caused him undue "anxiety, vexation, embarrassment and expense. . . ." Id. at 430.[6]

Finally, defendant does not expressly allege that the prosecutor's persistence was motivated by actual vindictiveness. Certainly, no presumption of vindictiveness is appropriate. The presumption applies when the State seeks superseding enhanced charges apparently to retaliate against a defendant who successfully exercised his or her appellate rights. See Blackledge v. Perry, 417 U.S. 21, 27-28 (1974). "The essence of the concept of prosecutorial vindictiveness is a violation of due process by retaliating against a defendant for exercising a legal right." State v. Gomez, 341 N.J. Super. 560, 571 (App. Div. 2001). "[N]o presumption of vindictiveness arises in the pretrial stage." Id. at 573. Although a due process violation can be established by "affirmative proof of actual vindictiveness," id. at 578, no such proof was offered here.

In sum, we reject defendant's argument that resubmission in this case warrants dismissal.

---

[6] We need not tailor the Abbati factors, see supra note 2, for application to this case, and we leave it to other courts to determine whether and how they should apply the factors to future cases. Given the presentation of new evidence, the strength of the State's case, and the lack of apparent negative impact on defendant, we discern no deprivation of fundamental fairness.

We also reject defendant's contention that Riedel's passing reference to defendant's admission of "some prior criminal history" tainted the grand jury. Riedel explained what prompted him to pat down defendant for weapons. He softened defendant's actual admissions of prior weapons-related arrests.

No doubt, trial testimony of such prior bad acts would be problematic, even if only offered to demonstrate why Riedel patted down defendant, and not to prove defendant's disposition to commit crimes, and conforming conduct. See N.J.R.E. 404(b); State v. Cofield, 127 N.J. 328, 338 (1992) (establishing test for admissibility of prior bad act evidence).[7] However, "we have upheld the validity of indictments by grand juries presented with a variety of evidence that would have been inadmissible at trial." Grant, 361 N.J. Super. at 357. That includes prior bad act evidence. See State v. Scherzer, 301 N.J. Super. 363, 428-29 (App. Div. 1997); State v. Engel, 249 N.J. Super. 336, 361 (App. Div. 1991). Riedel's testimony did not deprive defendant of a fundamentally fair grand jury proceeding.

---

[7] A court would need to weigh the prejudice of disclosure of a prior criminal history with its probative value. However, N.J.R.E. 404(b) does not apply in the grand jury. See In re Grand Jury Subpoena Issued to Galasso, 389 N.J. Super. 281, 292 (App. Div. 2006) (stating the grand jury functions "free from the constraints of the rules of evidence and procedure").

We discern no basis to disturb the trial court's denial of defendant's motion to suppress. We defer to the trial court's factual findings on a motion to suppress, unless they were "'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007). However, we exercise plenary review of a trial court's application of the law to the facts. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999). Applying that standard of review, we affirm the trial court's denial of the motion to suppress.

First, we shall not disturb the trial court's finding that McDowell credibly testified that the truck defendant and his father occupied blocked traffic.[8] On that basis, the stop was lawful. See State v. Locurto, 157 N.J. 463, 470 (1999) (stating "a police officer is justified in stopping a motor vehicle when he has an articulable and reasonable suspicion that the driver has committed a motor vehicle offense") (quoting State v. Smith,

---

[8] Defendant contends that the officer's motor vehicle recorder showed that the truck did not cross the fog line into the lane of traffic. However, he failed to provide the recording in the record on appeal. See Cmty. Hosp. Grp. v. Blume Goldfaden, 381 N.J. Super. 119, 127 (App. Div. 2005) (stating an appellate court is not "obliged to attempt review of an issue when the relevant portions of the record are not included"). In any event, the officer testified that the truck was depicted inside the fog line after Senior pulled into the driveway.

306 N.J. Super. 370, 380 (App. Div. 1997)); see also N.J.S.A. 39:4-127 (stating "[n]o vehicle shall back or make a turn in a street, if by doing so it interferes with other vehicles").

After interacting with defendant and Senior, McDowell and Riedel both formed a reasonable and articulable suspicion of a plan to commit burglary based on the totality of the circumstances. See State v. Gamble, 218 N.J. 412, 432 (2014) (stating that a court must determine "whether the totality of the circumstances provided the officer with an articulable and particularized suspicion that the individual was involved in criminal activity, within the context of the officer's relative experience and knowledge"). Those circumstances included: defendant's and his father's implausible and inconsistent responses to permissible, "ordinary inquiries incident to [the traffic] stop," see State v. Dunbar, 229 N.J. 521, 533 (2017) (quoting Rodriquez v. United States, 575 U.S. ___, 135 S. Ct. 1609, 1615 (2015)); their demeanor; the hour of the day; the out-of-state plates and driver's license; their all-black attire; and other items in plain view — including the rifle case.

Based on those circumstances, the officers were authorized to expand their inquiries, and extend the investigatory stop beyond the enforcement of traffic laws. State v. Dickey, 152

N.J. 468, 479-80 (1998). That is so, notwithstanding the absence of any other observed criminal behavior, and notwithstanding that there may have been an innocent explanation for the officers' observations. See State v. Citarella, 154 N.J. 272, 279-80 (1998) ("The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as 'a reasonable person would find the actions consistent with guilt.'") (quoting State v. Arthur, 149 N.J. 1, 11 (1997)). Contrary to defendant's assertions, the investigatory stop was not "more intrusive than necessary" nor was it a "de facto arrest." See Dickey, 152 N.J. 478-79.

Turning to the warrantless search of the truck's back seat and the rifle case, we reject defendant's argument that, because Officer Riedel did not inform him of his right to refuse, the State failed to establish his consent was knowing and voluntary. The State bears the burden to establish knowing and voluntary consent; in other words, "that the individual giving consent knew that he or she had a choice in the matter." State v. Hagans, 233 N.J. 30, 39 (2018) (quoting State v. Carty, 170 N.J. 632, 639 (2002)). "The lynchpin to voluntary consent 'is whether a person has knowingly waived [his or her] right to

refuse to consent to the search.'" Ibid. (quoting State v. Domicz, 188 N.J. 285, 308 (2006)).

Consent is "a factual question to be determined from the relevant circumstances." State v. Koedatich, 112 N.J. 225, 264 (1988). Factors that may indicate voluntariness include circumstances in which "consent was given where the accused had reason to believe that the police would find no contraband," and where "the defendant affirmatively assisted police officers." Hagans, 233 N.J. at 39 (quoting State v. King, 44 N.J. 346, 353 (1965)). In Koedatich, the Supreme Court recognized that knowing and voluntary consent may be implied by a person's conduct during his or her encounter with police. 112 N.J. at 262-65. That conduct includes a defendant's adoption of a "cooperative posture in the mistaken belief that he [or she] could thereby divert or prevent police suspicion . . . ." Id. at 262 (quoting People v. Engle, 164 Cal. Rptr. 454, 463 (Ct. App. 1980)).

Here, defendant undoubtedly wanted to reassure the officer that the rifle case did not contain a firearm. Knowing the case contained only tools, defendant likely hoped that consenting to the search would dispel police suspicion of him. He affirmatively invited Riedel to look inside of the case. The officer opened the truck's backdoor, removed the case, opened

it, and observed the tools. The warrantless searches of the case and the truck ended there. We are satisfied defendant knowingly and voluntarily consented to the limited intrusion into the truck, and the opening of the rifle case.

Furthermore, we are satisfied that even absent consent, the officers were authorized to perform a search of the rifle case under the plain view doctrine. See State v. Johnson, 171 N.J. 192, 205-07 (2002) (describing the doctrine). Consistent with the three elements of the doctrine, the officers were authorized to seize and search the case because: (1) they were lawfully present in the viewing area, having stopped the vehicle for a traffic violation; (2) they inadvertently discovered the case in plain view, meaning they did not in advance know they would discover it, or intend to seize it;[9] and (3) they had probable cause to associate the case with criminal activity. See id. at 206-08 (setting forth the three elements); see also State v. Earls, 214 N.J. 564, 592 (2013). We have previously held that an officer who saw firearms cases in a vehicle could open the door and seize them under the plain view doctrine. State v. Reininger, 430 N.J. Super. 517, 535-36 (App. Div. 2013); see also State v. Mann, 203 N.J. 328, 340-41 (2010) (approving

---

[9] The inadvertence prong applies to this case, although the Court eliminated it prospectively in State v. Gonzales, 227 N.J. 77, 101 (2016).

seizure of drugs in plain view on the back seat of the defendant's vehicle).

In light of the foregoing analysis, we need not address the State's argument that the search and seizure of the rifle case was justified by the protective sweep doctrine. We are satisfied the trial court properly denied defendant's motion to suppress. To the extent not addressed, his remaining arguments on this point lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

IV.

We are also satisfied that the sentence is not manifestly excessive or unduly punitive; the court correctly applied the aggravating and mitigating factors; and the sentence does not constitute an abuse of discretion. See State v. Cassady, 198 N.J. 165, 179-81 (2009); State v. Roth, 95 N.J. 334, 364-66 (1984).

However, as the State concedes, the trial court imposed a parole ineligibility period longer than it promised defendant in the plea agreement. Furthermore, the court failed to review the aggravating and mitigating factors anew, as required, before imposing a parole ineligibility period. See State v. Kirk, 145 N.J. 159, 178-79 (1996); State v. Towey, 114 N.J. 69, 81-82 (1989). The judgment of conviction also omitted mention of any

parole ineligibility period.  Since "the sentencing transcript is 'the true source of the sentence,'" <u>State v. Walker</u>, 322 N.J. Super. 535, 556 (App. Div. 1999) (quoting <u>State v. Pohlabel</u>, 40 N.J. Super. 416, 423 (App. Div. 1956)), we presume the JOC's omission was an oversight, unless the court expressly states a contrary intent.  We therefore remand for reconsideration of the parole ineligibility period.

V.

Affirmed as to the conviction. Remanded for reconsideration of the minimum period of parole ineligibility.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2058-15T3